UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v. CRIMINAL ACTION NO. 2:97-00033

JERRY LEE KEY

# MEMORANDUM OPINION AND ORDER

Pursuant to the petition seeking revocation of supervised release filed on August 24, 2012, and amendments thereto filed on September 26, November 5 and November 16, 2012, the court conducted hearing thereon on November 6, 27 and 28, 2012. Based upon the evidence adduced at the hearings herein, and the argument of the parties, the court makes the following findings of fact by a preponderance of the evidence and the accompanying conclusions of law.

I.

The court finds the following Grade C violations.

1. The defendant violated standard condition numbers 2 and 3 of his supervised release in that he failed to report to the probation officer on each August 14 and 20, 2012, as instructed by the probation officer.

2. The defendant violated special condition number eleven in that the defendant was questioned by law enforcement on April 6, 2012, regarding the sexual assault of a five-year old female, but failed to notify the probation officer within 72 hours of being so questioned.

3. The defendant violated the standard condition that he shall not commit another federal, state or local crime in that on August 16, 2012, the defendant committed a violation of West Virginia state law by leaving the scene of an accident arising from the defendant's crashing his vehicle into a fence, as admitted by the defendant to the probation officer.

**II.**

**The defendant violated the standard condition that he shall not commit another federal or state crime by virtue of the following.**

**H. A., a 17-year old girl, spent the evening of May 10, 2012, and most of the following day with her now ex-boyfriend, Cable Shamblin, at his home on Derrick's Creek in Kanawha County. After trying to get a ride from three other people, she called the defendant, who had become a family friend within the past year, to do so. The defendant picked her up. He told her that her mother was angry with her and that she should stay at his home that night to give her mother time to calm down. She agreed and they drove to a Wendy's restaurant where, at about 9:30 p.m., she got a sandwich and soft drink. They went on to the defendant's home on Coal River Road in the vicinity of St. Albans.**

**Once there, she played with the defendant's pet snake and the defendant offered her vodka, which she declined. A discussion followed while they were seated on the edge of a bed. The defendant asked if she believed in love at first sight, professing his admiration for her beauty and his love for her.**

**She said she believed in love at first sight, but that she was not in love with him and noted in particular the difference in their respective ages of 17 and 43. The defendant nevertheless said that he "wanted" her to which she replied "no." The defendant tried to kiss her to which she said "no" again. The defendant, being a foot taller than H. A. and of greater weight, pushed her down on the bed, removed his shirt, climbed on top of her and told her not to scream. He then told her that they could do it the easy way or the hard way and said, "trust me, you wouldn't want to do it the hard way." She did not know what he was going to do but she was scared and thought he was going to do something mean, and told him "no" again. He then removed her pants, her shirt and her bra, while he also removed his pants. Though she had told him "no" repeatedly, he placed her legs on his shoulders and forcibly engaged her in sexual intercourse during which she cried but otherwise was "doing nothing." He ejaculated deep within her, telling her that he wanted her to become pregnant.**

**After he was finished, she begged him to take her home. He undertook to fondle her and, following considerable delay, he told her he would take her back where he had picked her up. They left St. Albans for Derrick's Creek. The**

defendant delayed her return by going to the top of a mountain where he got out to urinate. He then came to the passenger side of the vehicle where she was seated and asked her for sex again which she refused. She was scared and urged him once more to take her where he was to let her out. Finally, the defendant dropped her off at Cable's house about 6:30 a.m. on August 12, 2012, and drove off. Cable was not there and she did not get in. Instead, she started walking along Derrick's Creek Road. About ten minutes later she received what is recorded as a text message from the defendant at 6:50 a.m. that said, "Did you get in." She replied "yes" so that he would not come back. She then sent a recorded text message to her mother's friend, Renee Walker, at 7:52 a.m. and a recorded text message to her mother's boyfriend, at 8:08 a.m., in each of which she stated that they were right about the defendant and that he had "done stuff to me."

Her mother's boyfriend responded by picking her up and taking her home where she bathed and told her mother what had occurred. They called 911 and then went to Women and Children's Hospital. At the hospital a sexual assault kit was used by Leigh Ann Bentley, a charge nurse and sexual assault examiner, to obtain vaginal swabs from her.

Kanawha County Sheriff's Deputy Aneglica Fisher met H. A. at the hospital where H. A.'s recorded statement was taken. In the recording, H. A. relates much of that which is set forth above and states that the assault took place about 11:00 p.m. on August 11, 2012. Four days later on August 16, 2012, H. A. gave another statement to Detective David H. Duff, II, of the Kanawha County Sheriff's Department, in which she verified that which was in the statement taken by Deputy Fisher. H. A. also gave what proved to be an accurate description of the interior of the defendant's residence about which she had no knowledge other than from her only visit there on August 11, 2012.

On August 17, 2012, Detective Duff contacted the defendant to serve a search warrant on him to obtain the defendant's DNA in the form of defendant's saliva. At that time, the defendant falsely denied picking up H. A. and having sex with her, and falsely stated that he had not seen her. The defendant also falsely stated to Detective Duff that H. A. had never been at his home.

The vaginal swab obtained from H. A., together with the known blood sample of H. A. and the known saliva of the defendant, were analyzed by Angela Gill, a DNA analyst in the

biochemistry section of the West Virginia State Police Crime Laboratory. The results from the vaginal swab were consistent with the mixture of DNA from the defendant and H. A. The probability of exclusion, for the mixture results so obtained, is 99.9999994%, meaning that 99.9999994% of the entire population would be excluded from contributing to that mixture of DNA and, further, only one in 179 million could have contributed to that mixture. Consequently, the defendant could not be excluded as a contributor to the mixture. These results establish by clear and convincing proof that the defendant engaged in sexual intercourse with H. A.

The court finds that the defendant engaged in sexual intercourse with H. A. without her consent and with forcible compulsion. The defendant thereby committed a violation of W. Va. Code § 61-8B-4(a)(1), reading as follows:

> (a) A person is guilty of sexual assault in the second degree when:
>
> (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion.

III.

The defendant violated the standard condition that he shall not commit another federal or state crime by virtue of the following.

Late in the day on May 11, 2012, J. Y., 13 years of age, was driven by the defendant to his residence so that he could finish a tattoo that he had started on her lower leg. J. Y. knew the defendant as one who was related to her family through marriage. The defendant had been known to the family for about a year. The defendant provided J. Y. with a pill, the substance of which is not known by J. Y. The defendant informed J. Y. that the pill would help with the pain from the tattooing. The defendant crushed up the pill and J. Y. snorted half of it. He then talked her into snorting the other half, at which point she lost consciousness.

When J. Y. regained consciousness, she saw that her pants and underwear were down, exposing her vagina. She also saw that the defendant's pants and underwear were undone. She felt weird from the drug she had ingested and began to scream. At that point the defendant placed his hand over her mouth and

**told her to stop screaming. By this time it was very late on May 11th or in the early morning hours of May 12th.**

**The defendant transported her to her mother's home which was then at Littlepage Terrace in Charleston. She went to sleep. When she awoke she told her family and friends what had happened but she was unable to recall, due to having been unconscious, that she had been subjected to sexual intercourse. Her mother, Lisa Y., received a call from her mother that J. Y. had been raped. Lisa Y. then took her to Women and Children's Hospital on May 12th.**

**Detective James Hunt of the Charleston Police Department was informed by the shift commander that a sexual assault victim was at Women and Children's Hospital and directed him to investigate. Detective Hunt met J. Y. at the hospital on May 12th and observed that she had very dilated pupils, indicating to him that a drug was present in her system. He interviewed J. Y. at the hospital and obtained from her much of that which is set forth above.**

While at Women and Children's Hospital on May 12th, a sexual assault kit was used by Ashley Hodges, a Registered Nurse in the Emergency Room, to collect vaginal swabs from J. Y. The vaginal swab obtained from J. Y., together with the known blood sample of J. Y. and the profile of the defendant's DNA obtained in connection with the similar analysis respecting H. A., were analyzed by Angela Gill, the DNA analyst with the biochemistry section of the West Virginia State Police Crime Laboratory. The results from the vaginal swab were consistent with the mixture of DNA from the defendant and J. Y. The probability of exclusion, for the mixture results so obtained, is 99.9999992%, meaning that 99.9999992% of the entire population would be excluded from contributing to that mixture of DNA and, further, only one in 118 million could have contributed to that mixture. Consequently, the defendant could not be excluded as a contributor to the mixture. Although J. Y., due to her then unconscious state, does not recall it, these results establish by clear and convincing proof that the defendant engaged in sexual intercourse with J. Y.

The court finds that the defendant engaged in sexual intercourse with J. Y. at a time when she was known to him to be unconscious and physically helpless by virtue of the drug he had given her to take, ostensibly to relieve the pain of tattooing. The defendant thereby committed a violation of W. Va. Code § 61-8B-4(a)(2), reading as follows:

> (a) A person is guilty of sexual assault in the second degree when:
>
> * * *
>
> (2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

Inasmuch as the defendant was then 43 years of age and J. Y. was 13 years old, the court finds that the defendant thereby committed a violation of W. Va. Code § 61-8B-5(a)(2), reading as follows:

> (a) A person is guilty of sexual assault in the third degree when:
>
> * * *
>
> (2) The person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant and is not married to the defendant.

**IV.**

**The defendant violated the standard condition that he shall not commit another federal or state crime by virtue of the following.**

**The defendant was arrested on August 29, 2012, on a warrant authorized by this court as a result of the filing of the original petition seeking revocation of his supervised release on August 24, 2012. The original petition alleged, inter alia, the sexual assault by defendant of a 17-year old female (H. A.). On September 26, 2012, the first amendment to the petition was filed adding a violation stemming from the defendant's leaving the scene of an accident after he crashed his vehicle into a fence. On November 5, 2012, the second amendment to the petition was filed alleging that the defendant had sexually assaulted a thirteen-year old female (J. Y.).**

**While the defendant was in custody pending hearing on these charges, the defendant, in his own handwriting, wrote a five-page letter addressed to Lisa Y., who is the mother of 13-year old J. Y. The letter was delivered to her, presumably by**

**the U.S. Postal Service, around the last of October or close to the first of November in an envelope addressed to her home at 104 Adams Avenue, Crab Orchard, West Virginia, where she received it. She believed that the letter was from the defendant "because it had his name on the envelope from South Central Regional Jail." Lisa Y. has since misplaced the envelope, but she turned the letter over to Detective Hunt two days after she received it.**

**In the letter the defendant makes known his awareness of, and his claim that he has evidence of, alleged promiscuous and criminal acts on the part of J. Y. and alleged criminal acts and child abuse and neglect on the part of Lisa Y. Criminal allegations are also leveled against several others. The defendant states that he has enough evidence to put Lisa Y. and two other named individuals behind bars for the rest of their lives – and two others for the next 40 years for selling illicit drugs and involving J. Y. in the sale of marijuana. The defendant then writes in conclusion as follows:**

> You, J. Y. or anyone else can appear in court against me if you all want to - I really don't give a damn – I'm well prepared for it. I'm not a 'snitch,' but believe me, I can be and the evidence that I have makes my testimony in court totally undeniable! So, if you all do decide to appear in court against me, then be ready to tell the truth about everything, because perjury (lying) is also a felony offense.
>
> . . . As for H.A., her mom, __________, and Persons #10 and 11, I have enough evidence of them selling pills to put them away in federal prison for a long time. Including H. A.'s mom ___________ for selling pills, as well as food stamps.
>
> Me getting evidence against all of you people was easier than taking candy away from a baby.
>
> I can do the time! Jerry
> Can you all ???

(emphasis as in original, with triple underlining for the sentence beginning with "So" down to "everything" and for "???")[1]

Although the letter was received prior to the filing of the second amendment in this case charging the sexual assault of the 13-year old J. Y., the defendant was aware when it was written that it was known by Probation Officer Troy Lanham that the defendant was being investigated by state authorities with respect to the sexual assault of J. Y. In particular, that

[1] It is noted that only a redacted copy of the letter was introduced and admitted into evidence. In the redacted copy, initials and blank spaces sometimes replace names, and at times Persons Nos. 1 through 11 are used instead of names.

information was conveyed to the defendant in the violation report that accompanied the original petition filed on August 24, 2012.

The letter was written by the defendant to Lisa Y. to threaten and intimidate Lisa Y. and her now 14-year old daughter J. Y., as well as, among others, 17-year old H. A. and her mother, with intent to influence and to prevent each of them from testifying against the defendant in this case - and from testifying in any other proceeding that targeted the defendant. Lisa Y. regarded the letter as being a scare tactic, though it did not dissuade her from testifying against the defendant. Neither did it dissuade H. A. from testifying.

The court finds that the defendant thereby committed a violation of 18 U.S.C. § 1512(b)(1) reading as follows:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> > (1) influence, delay or prevent the testimony of any person in an official proceeding; . . .
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

V.

This matter is set for sentencing at 1:30 p.m. on December 11, 2012.

The Clerk is directed to forward copies of this memorandum opinion and order to the defendant, all counsel of record, the United States Probation Department, and the United States Marshal.

DATED: December 5, 2012

John T. Copenhaver, Jr.
United States District Judge